IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| Kimball Construction Co., Inc. | : | |
| | : | |
| v. | : | Civil No. CCB-16-2619 |
| | : | |
| XL Specialty Insurance Co. | : | |
| | : | |

**<u>MEMORANDUM</u>**

Plaintiff Kimball Construction Company, Inc., ("Kimball") brought this action in state court against XL Specialty Insurance Company ("XL Specialty"), seeking reimbursement for $588,127.01 of payments that are at risk of being forfeited by Kimball as preference payments in a separate bankruptcy action pending in the Eastern District of Virginia. XL Specialty removed the action to federal court and moved to dismiss or, in the alternative, for summary judgment.

Pending before the court is the defendant's motion to dismiss for failure to state a claim or, in the alternative, for summary judgment. (XL Specialty Mot. Dismiss, ECF No. 7). Kimball filed a response in opposition to the motion to dismiss (Kimball Opp'n Mot. Dismiss, ECF No. 10), to which XL Specialty replied. (XL Specialty Reply Opp'n Mot. Dismiss, ECF No. 11). The motions are fully briefed, and no oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, the defendant's motion for summary judgment will be granted.

**BACKGROUND**

Blumenthal Kahn Truland Electric, LLC ("Truland") filed a Chapter 7 bankruptcy petition on July 23, 2014, in the Eastern District of Virginia. (Compl. ¶ 4, ECF No. 2). Prior to

its bankruptcy filing, Truland served as a direct subcontractor for several construction projects at Fort Meade, Maryland. (Compl. ¶¶ 1, 17, 33). Kimball was an electrical subcontractor on three of those construction projects that are the subject of this action. (*Id.*). The general contractor for the projects was URS Energy & Construction ("URS"). (Compl. ¶¶ 2, 18, 34). Truland executed payment bonds with XL Specialty for the three construction projects involving Kimball, with Truland as the principal, XL Specialty as surety, and URS as obligee. (Compl., Ex. 1, Pro. 1 Subcontract, ECF No. 2-2; Compl., Ex. 7, Pro. 2 Subcontract, ECF No. 2-8; Compl., Ex. 9, Pro. 3 Subcontract, ECF No. 2-10).

The first subcontract between Kimball and Truland concerned a project known as Building 9840 Substation Uninterruptible Power Supply with UMS Module Installation (Project 1) at Fort Meade. (Compl., Ex. 1, Pro. 1 Subcontract 1). XL Specialty issued a payment bond on behalf of Truland for Project 1, numbered "SUR7402648" ("Project 1 Bond"). (Compl., Ex. 2, Pro. 1 Bond, ECF No. 2-3). On December 2, 2014, XL Specialty paid Kimball $5,233.75 in response to a claim submitted by Kimball against the Project 1 Bond. (Daily Aff. ¶ 3, ECF No. 7-1).

The second subcontract between Kimball and Truland concerned a project known as Building 9800 Substation Uninterruptible Power Supply with UMS Module Installation (Project 2), also at Fort Meade. (Compl., Ex. 7, Pro. 2 Subcontract 1). XL Specialty issued a payment bond on behalf of Truland for Project 2, numbered "SUR7402653" ("Project 2 Bond"). (Compl., Ex. 8, Pro. 2 Bond, ECF No. 2-10). On December 2, 2014, XL Specialty paid Kimball $352,218.89 in response to a claim submitted by Kimball against the Project 2 Bond. (Daily Aff. ¶ 4).

The third and final subcontract between Kimball and Truland concerned another Fort Meade project, various construction activities on the South Vault Primary Switch (Project 3). (Compl., Ex. 9, Pro. 3 Subcontract 1). XL Specialty issued a payment bond on behalf of Truland for Project 3, numbered "SUR7402649" (Project 3 Bond). (Compl., Ex. 10, Pro. 3 Bond, ECF No. 2-11). On December 2, 2014, XL Specialty paid Kimball $22,835.82 in response to a claim submitted by Kimball against the Project 3 Bond. (Daily Aff. ¶ 5).

In return for the three XL Specialty payments dated December 2, 2014, Kimball executed a "Final Affidavit, Release, and Assignment" ("Release") for the benefit of XL Specialty in connection with the Projects 1, 2, and 3 Bonds. (XL Specialty Mot. Dismiss, Ex. A, ECF No. 7-5; XL Specialty Mot. Dismiss, Ex. B, ECF No. 7-6; XL Specialty Mot. Dismiss, Ex. C, ECF No. 7-7). In the Releases, identical for each respective Bond, Kimball agreed to "release, acquit, exonerate and discharge Surety from all acts, suits, claims, damages and liabilities whatsoever which [Kimball] may have against Surety and Contractor covering the following contracts." (XL Specialty Mot. Dismiss, Ex. A 1). The Releases were signed by Stephen Kimball, Kimball's Vice President, and notarized in the state of Maryland. (*Id.*).[1]

On October 16, 2015, the Trustee in the Truland bankruptcy case filed a Complaint to Avoid Transfers and to Recover Property and for Related Relief. (Compl., Ex. 3, ECF 2-4). The Trustee claimed that payments of $588,127.01 which Truland made to Kimball in May and June of 2014 were avoidable preferences pursuant to 11 U.S.C. § 547(b) and sought to avoid those transfers. (*Id.* at Attach. 1). Kimball denies liability and is defending against the Trustee's claims in the United States Bankruptcy Court for the Eastern District of Virginia. (Compl. ¶ 7).

---

[1] Projects 1, 2, and 3 are collectively referred to herein as the "Projects." The Project 1 Bond, Project 2 Bond, and Project 3 Bond are collectively referred to here as the "Bonds." The Project 1 Release, Project 2 Release, and Project 3 Release are collectively referred to herein as the "Releases."

3

Kimball filed an action in the Circuit Court for Anne Arundel County on June 14, 2016, claiming that XL Specialty is ultimately liable under the Bonds for any amounts that Kimball may be compelled to pay the Trustee in the bankruptcy proceeding. Kimball also claims that XL Specialty would be unjustly enriched if Kimball were required to pay funds to the bankruptcy Trustee. XL Specialty filed a notice of removal in this court on July 29, 2016, pursuant to 28 U.S.C. §§ 1332 and 1441, and subsequently filed a motion to dismiss or for summary judgment.

## ANALYSIS

### I. Standard of Review

This court has diversity jurisdiction over the case, 28 U.S.C. § 1332(a), because the parties are diverse and the amount in controversy exceeds $75,000. The case was properly removed from the Circuit Court for Anne Arundel County, Maryland, pursuant to 28 U.S.C. § 1441(a). The defendants have moved to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.

A court considers only the pleadings when deciding a Rule 12(b)(6) motion. Where the parties present matters outside of the pleadings and the court considers those matters, as here, the motion is treated as one for summary judgment. *See* Fed. R. Civ. P. 12(d); *Gadsby by Gadsby v. Grasmick*, 109 F.3d 940, 949 (4th Cir. 1997); *Paukstis v. Kenwood Golf & Country Club, Inc.*, 241 F. Supp. 2d 551, 556 (D. Md. 2003). "There are two requirements for a proper Rule 12(d) conversion." *Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore*, 721 F.3d 264, 281 (4th Cir. 2013). First, all parties must "be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment," which can be satisfied when a party is "aware that material outside the pleadings is before the court." *Gay v.*

*Wall*, 761 F.2d 175, 177 (4th Cir. 1985); *see also Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (commenting that a court has no obligation "to notify parties of the obvious"). "[T]he second requirement for proper conversion of a Rule 12(b)(6) motion is that the parties first 'be afforded a reasonable opportunity for discovery.'" *Greater Baltimore*, 721 F.3d at 281.

Kimball had adequate notice that XL Specialty's motion might be treated as one for summary judgment. The motion's alternative caption and attached materials are in themselves sufficient indicia. *See Laughlin*, 149 F.3d at 260–61. Moreover, the plaintiff referred to the motion in their opposition brief as one for summary judgment and submitted additional documentary exhibits. If Kimball had thought that it needed additional evidence to oppose summary judgment, Rule 56(d), which they have not invoked, afforded them the opportunity to seek further discovery through an affidavit. *See* Fed. R. Civ. P. 56(d); *see also Greater Baltimore*, 721 F.3d at 281 ("[The defendant] took 'the proper course' when it filed the Rule 56([d]) Affidavit, 'stating that it could not properly oppose . . . summary judgment without a chance to conduct discovery.'") (citation omitted); *Laughlin*, 149 F.3d at 261 (refusing to overturn district court's grant of summary judgment on assertions of inadequate discovery when the nonmoving party failed to make an appropriate motion under Rule 56([d])). Therefore, the court will consider the affidavits and additional materials submitted by the parties and will treat the motion of the defendant as a motion for summary judgment.

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has clarified

that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). Whether a fact is material depends upon the substantive law. *See id.*

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion,'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration in original) (quoting *United States v. Diebold*, 369 U.S. 654, 655 (1962)), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks omitted).

## II.   Impact of Releases on XL Specialty's Obligations Under the Bonds

In Counts One, Three, and Five of the complaint, Kimball seeks recovery from XL Specialty under the payment bonds on the grounds that the preference action against Kimball revives XL Specialty's obligations as surety on the bonds.

A surety bond is a "tripartite agreement among a principal obligor, his obligee, and a surety." *Nat'l Union Fire Ins. Co. of Pittsburgh v. David A. Bramble, Inc.*, 388 Md. 195, 879

A.2d 101, 107 (2005) (citations omitted). As the liability of a surety is "coextensive with that of the principal," the surety's liability is measured "by the contract of the principal." *Gen. Building Supply Co. v. MacArthur*, 228 Md. 320, 179 A.2d 868, 871–72 (1962). Absent any other agreement between the parties, a payment from a debtor which is later set aside as a preference does not discharge a surety. *In re Express Liquors, Inc.*, 65 B.R. 952, 962 (Bankr. D. Md. 1986) (citing *Herman Cantor Corp. v. Central Fidelity Bank (In re Herman Cantor Corp.)*, 15 B.R. 747, 750 (Bankr. E.D. Va. 1981)); *see also* Restatement (Third) of Suretyship and Guaranty § 70 (1996).

XL Specialty denies liability for the preference payments, claiming that Kimball released any remaining claims against the Bonds in December of 2014 when it signed the Releases for Projects 1, 2, and 3. If the parties had not signed a release agreement, the analysis of XL Specialty's liability would be governed by normal tenets of suretyship law. Because a valid release agreement exists, it must be taken into account when analyzing the pending motion.

Under Maryland law, releases are treated as contracts and are "construed and applied according to the rules of contract law." *Owens-Ill., Inc. v. Cook*, 386 Md. 468, 872 A.2d 969, 985 (2005). It is well settled that "a release is to be construed according to the intent of the parties and the object and purpose of the instrument, and that intent will control and limit its operation." *Id.* (quoting *Shriver v. Carlin & Fulton Co.*, 155 Md. 51, 141 A. 434, 440 (1928)). Still, Maryland courts follow the objective theory of contract interpretation and construction. *Id.*; *Brethren Mut. Ins. Co. v. Buckley*, 437 Md. 332, 86 A.3d 665, 670 (2014). A court construing an agreement under the objective theory must determine from the language of the agreement itself "what a reasonable person in the position of the parties would have meant at the time it was

effectuated." *Id*. (quoting *Gen. Motors Acceptance Corp. v. Daniels*, 303 Md. 254, 492 A.2d 1306, 1310 (1985)).

When the language of the contract or release is "plain and unambiguous" the court must "presume that the parties meant what they expressed." *Brethren Mut. Ins.*, 86 A.3d at 670. On a motion for summary judgment, "a court will only consider extrinsic evidence concerning the parties' intent if it first deems the contract's language ambiguous." *United States v. Hartford Accident & Indem. Co.*, 168 F. Supp. 3d 824, 832 (D. Md. 2016) (citing *Spacesaver Sys., Inc. v. Adam*, 440 Md. 1, 98 A.3d 264, 277 n. 12 (2014)).

Here, the language of the Releases is straightforward and unambiguous. The identical documents "release, acquit, exonerate and discharge [XL Specialty] from *all* acts, suits, claims, damages and liabilities whatsoever which [Kimball] *may have* against [XL Specialty]" relating to Projects 1, 2, or 3. (XL Specialty Mot. Dismiss, Exs. A, B, C) (emphasis added). Unless the Releases are invalid or inapplicable in some fashion, it is clear that XL Specialty is relieved from liability under the Bonds. In its opposition brief, Kimball contests both the validity and the applicability of the Releases.

    **a. Validity of the Releases**

First, Kimball argues that the Releases were "premised" on the May and June payments from Truland to Kimball, and that the Releases will be invalid once those payments are legally reversed as preferences. Kimball notes that the preference action was not "filed nor contemplated" at the time of the Releases. (Kimball Opp'n Mot. Dismiss 11). As such, Kimball claims the Releases should be set aside for reason of "mutual mistake, supervening illegality, or frustration of purpose." (Kimball Opp'n Mot. Dismiss 12) (citing *Wallace Hardware Co., Inc. v.*

*Abrams*, 223 F.3d 382, 408 (6th Cir. 2000)); *see also Golub ex rel. Golub v. Cohen*, 138 Md. App. 508, 772 A.2d 880, 886 (2001) (noting that an unambiguous release must be enforced "in the absence of fraud, accident, or mutual mistake").

Kimball's argument is not persuasive. A release may be set aside for "mutual mistake, supervening illegality, or frustration of purpose," but no such circumstances exist here. While it is clear that the bankruptcy trustee initiated the adversary proceeding after the Releases were executed, the bankruptcy action itself was filed over four months prior to the Releases' execution. Kimball signed the Releases with clear notice of Truland's bankruptcy and could have contemplated the possibility of future preference actions. *See In re Express Liquors,* 65 B.R. at 962–63. Still, Kimball signed an unequivocal agreement to "release, acquit, exonerate and discharge" XL Specialty from "all suits, claims, damages and liabilities whatsoever." (XL Specialty Mot. Dismiss, Exs. A, B, C). The Releases are valid.

### b. Applicability of the Releases

Kimball next argues that, even if the release is valid, the language does not provide express release from claims for payments later found to be preferential. Kimball contends that, since releases "are to be construed according to the intent of the parties," the "absence of clear intentions vitiates the ability to provide preclusive effect when such claims later arise." (Kimball Opp'n Mot. Dismiss 12) (citing *Pantazes v. Pantazes*, 77 Md. App. 712, 551 A.2d 916, 920 (1989)).

Regardless of Kimball's later-expressed intent, the Releases are applicable as to the claims for payments later found to be preferential. Under Maryland law, when the language of a release is clear and unambiguous, "the court will presume that the parties intended what they

expressed, even if the expression differs from the parties' intentions at the time they created the contract." *Chicago Title Ins. Co. v. Lumbermen's Mut. Cas. Co.*, 120 Md. App. 538, 707 A.2d 913, 917 (1998); *Pantazes*, 551 A.2d at 921 ("Where a contract is plain and unambiguous, there is no room for construction, and it must be presumed that the parties meant what they expressed.") (citing *Kasten Constr. v. Rod Enterprises*, 268 Md. 318, 301 A.2d 12, 18 (1973)). Unlike the agreement in *Pantazes*, the language of the release is broad and unambiguous; the absence of express language releasing XL Specialty from claims resulting from preference payments is therefore irrelevant. Kimball's release of XL Specialty from "all suits, claims, damages and liabilities whatsoever" applies to the potential preference payments.

Kimball cites the Fourth Circuit's decision in *Barron v. UNUM Life Insurance Company of America*, where the court declined to apply a release between an employee and an insurer who served as administrator of employer's long-term disability insurance benefits. 260 F.3d 310 (4th Cir. 2001). The release, executed under the employee benefit plan of the plaintiff's previous employer, was "not sufficiently broad" to bar claims by the plaintiff five years later under a different employee benefit plan. *Id.* at 312. The court found that the "general release language," including the relinquishment of "all claims I have or may have against UNUM," only applied to transactions, conduct, or events occurring before the release's execution. *Id*. at 317.

Here, Kimball's release of XL Specialty is distinguishable from the release in *Barron*. While the release in *Barron* was made regarding one employment benefit plan and found inapplicable to a completely different plan five years later, the Releases were made to cover claims arising under Bonds 1, 2, and 3. XL Specialty's December 2, 2014, payments to Kimball arose out of Bonds 1, 2, and 3, as would the potential claims on the May and June 2014

payments. The Releases are sufficiently broad to cover any claims arising from potential preference payments.

### III. Counts of Unjust Enrichment

In Counts Two, Four, and Six of the complaint, Kimball seeks recovery from XL Specialty in excess of $75,000 for the preference payments it might pay the trustee under a theory of unjust enrichment. Kimball claims that XL Specialty, as surety, will benefit from Kimball's repayment of the preferences because XL Specialty will be relieved of its obligation to ensure Kimball is paid for work competed on the Projects.

Under Maryland law, a claim of unjust enrichment serves to "deprive the defendant of benefits that in equity and good conscience he ought not to keep, even though he may have received those benefits quite honestly in the first place." *James B. Nutter & Co. v. Black*, 225 Md. App. 1, 123 A. 3d 535, 549 (2015) (quoting *Hill v. Cross Country Settlements*, 402 Md. 281, 936 A.2d 343, 352 (2007)). It is "settled law" in Maryland that "a claim for unjust enrichment may not be brought where the subject matter of the claim is covered by an express contract between the parties." *FLF, Inc. v. World Publ'ns, Inc.*, 999 F. Supp. 640, 642 (D. Md. 1998).

Here, the Bonds are express contracts that govern the relationship between the parties and the subject matter of this dispute. Because Kimball and XL Specialty have a contractual relationship, and there is no allegation of fraud or bad faith, Kimball cannot seek restitution under a theory of unjust enrichment. *See Kwang Dong Pharm. Co. v. Han*, 205 F. Supp. 2d 489, 497 (D. Md. 2002) ("Maryland hold[s] that an unjust enrichment claim[] [is] barred where an express contract exists . . . ."); *United States v. EER Systems Corp.*, 950 F. Supp. 130, 133 (D. Md. 1996) (holding that unjust enrichment is an "inappropriate claim[] when there is an express

contract").

## CONCLUSION

Kimball may not recover under the Bonds for any potential preference payments, or under a theory of unjust enrichment. For the reasons stated above, XL Specialty's motion for summary judgment will be granted. A separate order follows.

October 18, 2016                                       /S/
Date                                                              Catherine C. Blake
                                                                         United States District Judge